Case number 19-0502, Michael Beyer v. Board of Education of the City of Chicago Would you both step up and say your name for the record and then you can say it again when it's your turn. Good morning, your honors. My name is William John Quinlan and I represent the plaintiff appellants Michael Beyer, Teresa D'Cores, Christopher McCabe, and Giselle Jackson. Good afternoon, counsel. Thank you. Both masters on behalf of the appellees. Thank you, counsel. Whenever you're ready, Mr. Quinlan. Thank you, Justice Conway. May it please the court. This court should reverse the circuit court's lifting of the stay of the administrative order for plaintiff suspension without pay, denying plaintiff's injunctive relief, and dismissing plaintiff appellant's claims for declaratory judgment writ a mandamus. Under Illinois law, an administrative agency such as the Chicago Public Schools or CPS only has such power conferred to it by legislative grant and may not exceed its statutory authority. Section 3485 of the Illinois School Code provides for termination proceedings and for an optional ancillary separate suspension proceedings against tenured teachers and contract principals such as Dr. Beyer. But Section 3485 of the school code does not confer any authority to conduct a rehearing or reconsider a decision in this case by the CEO, Janice Jackson. Counsel, does this case all hinge on whether or not the second hearing was unlawful? Yes, if I may explain a little bit more further. With respect to the mandamus, Justice Conway, it hinges on whether or not there was a decision in the first hearing which is a decision by the CEO which would make the second hearing unlawful. Was there a decision on everything in the first hearing or was there any decision in the first hearing? I would argue there was a decision on everything in the first hearing, if I may. Under Section 3485 and specifically Section 82, the CEO of Chicago Public Schools has the discretion, that is, can make the decision to suspend a principal without pay, which is separate, just to be clear, from the termination proceedings which are run and decided by the board. So they're two separate proceedings. Dr. Jackson, who's the CEO, decides, one, whether to initiate these proceedings. She prosecutes the proceedings. And her and her designee decide whether or not to suspend without pay. So when this hearing commenced, the CEO put their case in chief in during this. Then the CEO stepped back and made a decision which would be no different than the court here. The deciding decider made a decision to terminate those proceedings. Because it is the person who would decide whether to suspend without pay, they are effectively and did make the decision not to suspend Dr. Byer with pay when they terminated the proceedings after the case in chief. Are you saying when they terminated the pre-suspension hearing, that was a decision not to terminate? Not to suspend him without pay. The termination is a separate proceeding which is different than this. Yes, and I would say it is because it was made by the person who would decide whether to do that. It wasn't made by someone ancillary. It's not akin to, if I could make the analogy where you have a state's attorney who would bring a case and then decide to nolly-cross. The person that made the decision to terminate the proceedings here was the actual adjudicator of facts. The person who would determine whether or not to suspend without pay. So no different than a trial court that would terminate a case. It's like a judgment, you know, either notwithstanding the verdict or a directed verdict. Couldn't your client ask for the pre-suspension hearing to start over with Judge Jacobius? No, if I may. Yeah. So, and I think that gets a little convoluted in the briefs. Initially, when the charges were brought and the pre-suspension hearing was filed, we filed a motion for temporary restraining order that said, when it was heard by Judge Jacobius, we said stop the proceedings, have them go forward and pass rules, which they were obligated to do. Once they pass the rules, go forward. Judge Jacobius is ruling this to the CPS. Well, you can go forward. You know, you pay the money, you take a choice. You can go forward, but then I'm going to stay here for 10 days and I'll look at this. We gave them that option. They went forward. They actually told Judge Jacobius there were rules. They proceeded to go forward. They had this hearing, and at that point, that was moved. Once they put their case in chief, we came back to the court saying, terminate this because there were no rules. It violates the statute. It's over. Rather than a court make the determination, again, the deciding, the decider, if you will, the adjudicator, which in this case is the CEO, said, we're going to terminate the proceedings based on what has occurred. And essentially, it's the same way as discretionary to bring this. It's not mandatory. When you put your remedy in bed, you asked the court, what did you want the court to do? With respect to the second motion to terminate? Yes. We wanted the court to find that the first hearing was violating the statute because it didn't have rules so it would have voided the hearing. They didn't follow the law because there was no rules. It was conducted improperly. So at some point, you would want your client to have another hearing, right? At some point? No. Originally, at least as I recall, Justice Cunningham, once here, the CEO decided to go forward and use the authority and, again, took the position they were complying with the rules. They said there were rules. I mean, we can't lose sight of the fact that CPS said that they did have rules and complied with the statute, that they went forward, and once they did that, they couldn't rehear it. They would work outside of the authority that was provided to them by the General Assembly in Springfield. So would you say the hearing was void? No. Sorry. I didn't mean to talk over you. I apologize. I would say that the hearing didn't follow the statute. They were, they being, the CEO was allowed to have the hearing because the statute provided that the CEO may have. But let me, we're talking about the first or second hearing. I just want to be clear. The first. The first hearing, I would say, was not void. It didn't comply with the statute. The second hearing was void because a decision was made when the decider made a decision to terminate the proceedings or not suspend Dr. Byer with pay because it's exactly the same thing. It's no different than a directed verdict. Counsel, what's the statute that talks about pre-suspension hearings? Sure. It is? Pre-suspension hearings. Correct. Correct. It is 105 ILCS 5-3485, section A2. Slower. Sorry. I apologize. Continue. 105 ILCS 5-3485. Oh, yeah. Okay. And it's paragraph A2 where they separate the two, which is, that provision talks about the termination proceedings. And A2, Justice Conner, speaks to this optional pre-suspension procedure, which it designates the difference between what the board's role here is with respect to termination versus what is exclusively the CEO's role with respect to this pre-suspension. I understand. Does it talk about re-hearings? It does not, which I think is important. It does not talk about re-hearing. It does not convey the authority for re-hearing. And that is, at least as I understand it, based upon the brief, that's not in dispute with the Chicago Public Schools. They don't disagree with that. The second issue deals with the fact that we brought a preliminary injunction as well, Your Honors. And with respect to that, there's no dispute the defendant hadn't answered the complaint. And as a result, the facts of our complaint need to be taken as true. And to boil this down, the only issue it appears that the trial court dealt with, or at least sort of what this hinges upon, is the idea of whether or not irreparable harm had occurred. And the misapplication of facts was Dr. Byer was not suspended. In order to suspend him, you'd have to have the pre-suspension hearing. So the issue about whether Dr. Byer was suspended prior to this hearing, there was no dispute he was not suspended. There was no facts that were taken into evidence. This was purely based upon the facts in the complaint. Where in the complaint we lay out very specifically Dr. Byer's reputation, the reputational harm, the facts that by being suspended, and there's a Northern District Court case which I recognize is merely persuasive, but deals with the idea that reputational harm, when you're talking about suspending someone, their work and their good deeds, and how that can lead to irreparable harm. That was not addressed by the court merely by saying that they misapplied the facts, by saying Dr. Byer was suspended. And as I said, there was no evidence taken. There was no facts in dispute. It was just purely based on that. And this did hinge on whether or not there was irreparable harm. And that harm, based on the complaint, is present. And as a result, you would say at least at that point, a plenary injunction should have issued based upon those facts. A trial could have or could have revisited based upon evidence to do that. But the court improperly made factual determinations outside of the record where in its own opinion it recognizes that it had to take all the facts as true. But there was affirmative matter that was brought up on your side, right? It's a 2619, right? It is a 2619. And candidly, I don't know what affirmative matter was brought up. I participated in that. That's what one needs. And I say that not knowing what a 2619 is, just saying that I would – that judgment on the pleadings is typically a 2615. And the court went further to say that they took it more as a 2615 – or sorry, as a judgment on the pleadings and a spoke. There was no affirmative matter that was either attached to the pleadings that one would look at. I think the 2619, at least as far as it's from that, was just as a matter of law. But obviously, I can't get myself inside the head of this. That was the basis, 2619. Correct. No, no, you're 100 percent right. The opinion says 2619. And if I paused, it was more that it was a question that obviously I raised as I went through that. Thank you. And I just – I would summarize. I really think this case comes down to those two issues, is did the CEO exceed their authority with respect when they made a determination to not suspend? And I guess if I may step back from that, there were other options to the CEO when you talk about the mandamus issue and about exceeding. The CEO could have suspended the proceedings, to your point, then gone back and tried to pass these rules and come back. They didn't do that. The record is clear that even in the second hearing, they made a point when they decided to say that evidence wasn't introduced from the first hearing into the second hearing. They made a point to say it's a totally separate hearing. Where they could have, to make it similar to the other cases that have been cited in the briefs, where one party had the Carter case where they suspended the hearing, a new law was passed, and then they moved forward with that. This hearing was not suspended. As I said, they closed their case. They made a point to make the affirmative decision to terminate, to end that. That option was there. The other option which could have occurred is you will hear about new charges that were brought and brought into that. They could have taken those new charges, brought them separately, as they've done in the past with other – and they could have brought a new pre-suspension. It would have been obviously the prerogative of the CEO whether they wanted to move on those loan charges. But again, she made a decision to decide to put these together. She made a decision to terminate the proceedings and made a decision to start the new proceedings as they did. So that very basically is – I think there's a lot of things that get confused with the case in the score code here, but it basically comes down to did the CEO exceed their authority with respect to the second hearing after they decided to terminate the first hearing? And by terminating the first hearing, it was a decision to not suspend Dr. Byer without pay because it was brought, it started, the charges were brought to suspend him without pay. The case was closed by the CEO to suspend him without pay. And then after that, the CEO said, we're going to terminate. We're going to terminate this hearing, thereby not suspending Dr. Byer without pay. And the second, which was the preliminary injunction that was part of this, that we brought, was to say, stay this decision so we could have a more thorough hearing so you could look at this, you could take evidence in. We had a complaint. The Chicago Public Schools chose not to answer that complaint, which they had every right to do so, but did not. And the facts from the complaint need to be taken as true. And in those facts, which the decision to not grant, at least on the opinion, to not grant the preliminary injunction was done merely on whether or not there was irreparable harm. And that is clear in the complaint. And it was decisions that were made without factual. You know, the issue is the court said, well, he was effectively suspended. When the record's clear, he wasn't suspended. In fact, we got a pre-suspension, which would, by its very nature, determination was going to be made whether to suspend him. And two, whether this reputational harm and the like that is irreparable that Borderline references would be something that a court could make a determination if they took evidence. They could see, well, did that essentially occur when you were transferred from your duties? Or does that occur when you get the stigma of actually being suspended, when you would answer on a questionnaire or something? As a matter of fact, have you been suspended, discharged, and the like? Yes. And, you know, that did not occur based on the facts before the court. We believe that, one, the second hearing was, you know, there was no authority for it because the decision not to suspend Dr. Byer had occurred when the decision maker decided to terminate. And two, if not, a preliminary injunction should have issued based upon the facts and the complaint and that the court abused its discretion by finding facts that were, you know, not in the record without taking evidence for a hearing and made an improper decision based upon suspension. With that, I'd reserve the remaining part of my time. Thank you. Thank you. Good afternoon, and may it please the court. The procedures followed by the defendants… What's your name? Oh, sorry. Ruth Masters on behalf of the Apple East. The procedures followed by the defendants to suspend Dr. Byer without pay, pending resolution of the dismissal charges against him, afforded him all the process to which he was due and were in compliance with Illinois law. Today, I'm going to discuss three reasons why it is claimed that he is entitled to various forms of relief to avoid being suspended without pay lack merit. First, the second PSA pre-suspension hearing resulting in Dr. Byer's suspension was justified based solely upon new charges that were not at issue in the first PSH. Counsel, just remind me, the first pre-suspension hearing, how did that end? The first pre-suspension hearing ended when Dr. Jackson, in light of the lawsuit brought by the plaintiff, decided not to proceed. And I want to bring out something very important, because I believe counsel has just misrepresented their position in the lower court. In that first pre-suspension hearing, their complaint specifically asked that we don't proceed, and if we proceed, reenact rules. And it made that representation in the complaint, it made that representation in the temporary restraining order. And then in the temporary ‑‑ I'm sorry, temporary restraining motion order. Motion for ‑‑ They had a pre-suspension hearing in the first one. Yes. And to add to that, was there a ruling by someone to do something? Was there a final ruling? No. And that's what's so important here. Dr. Beyer's argument attempts to separate the purpose of a PSH from just the occurrence of proceedings. We don't have process just for the sake of process. The purpose of the PSH was to determine whether the charges pending against Dr. Beyer, and in the first hearing it was only charges related to whether he had done improper attendance accounting. The very purpose of that PSH was to determine whether there were reasonable grounds to believe that those dismissal charges were true and whether the charges warranted suspension without pay pending the outcome of the discharge hearing. And what happened at the end? We are not going to proceed. We're going to terminate this proceeding. We're going to enact rules because his first lawsuit said your ‑‑ his initial complaint, I should say, said your PSH is unlawful because the Illinois school code says you can only proceed if you have rules in place to conduct a PSH. You need to end that proceeding. It's void. And that's one of the things I want to get to in a second. And so we sent an email saying we're going to terminate, we're going to issue rules, and we're bringing amended charges. So there's a few different points here, right? So did you then promulgate rules? Yes. And then reschedule the PSH that your opponent had complained about being conducted without rules? Correct. And it's not just that he complained about it. He repeatedly, and we give all this, a bunch of sites on page 9 of our briefs. And what was the result of that? I'm just, I mean, we've read the facts and the records, but I'd like you to walk me through your decision. Sure. So walk you through the result of the whole proceedings or? We've got some data here. Okay. So Dr. Dyer brings a complaint. He says that conducting a PSH, well, first we charge him. And the only charges are improper attendance recordkeeping. He goes to circuit court and says, I want an injunction. I want the T.O. to block this proceeding. If they proceed, proceeding without rules under Section 3485 of the school code is unlawful. And if they proceed, that proceeding will be void. Any result of that proceeding will be void. The court issues a T.R.O. Well, it basically issues a T.R.O. that says you can go ahead, but your results can't be put into effect for 10 days so the plaintiff can come back and, you know, the court could reconsider whether a process did in fact violate the school code. We proceed to conduct two days of hearings. He brings another motion to declare the PSH unlawful. And in that motion, that second motion, he repeatedly states, and this is what's on page 9 of our brief, that those proceedings are void. They are void as violative of the due process clause of the Illinois Constitution, the federal Constitution, and under Illinois statute. A few weeks later, we terminate the process. There was actually an additional hearing date scheduled. We cancel that hearing date. We terminate the process. And we send an e-mail saying, yes, we are terminating the process. We are going to issue rules. We are going to issue amended charges. Because in the interim, between when the first proceeding started and us terminating, so six weeks after the initial charges and the initial start of these proceedings, their initial PSH, we discovered additional evidence related to the breach of confidential information. Dr. Byer had let confidential information become breach confidentiality about student and employee records. And we discovered that in December, so we wanted to amend charges and charge that very separate misconduct and seek suspension and termination for that as well. And that's what happens. So we issue, we stop the first proceeding. There is no determination on the merits about whether that initial charge related to attendance records warranted suspension. That is the entire purpose of a PSH. There is no determination about that. We just terminate the proceedings. And then we bring amended charges. We conduct a second PSH. We issue rules, bring amended charges, and conduct a second hearing. At that second hearing, both charges are considered. Dr. Byer admits in his brief he had an opportunity to barely respond. He submitted evidence before the hearing officer. And the hearing officer concludes at the end, and that was all, by the way, in accordance with our new written rules that he asked for. At the end of that proceeding, the hearing officer issues written findings that state suspension is warranted for the attendance issues, the attendance charges, but separately and independently and as a completely sole basis, suspension is also warranted on the amended charges. And for that reason alone, Dr. Byer's arguments should be rejected because the suspension is completely valid on amended charges. It's not conceivably a re-hearing when we have new charges. The other point I would like to bring out is that one other point, at least. I have seven. Sure. There seemed to be a suggestion there wasn't. There was some affirmative matter presented. It was a 2619 motion, right? It was rolled on by the court as the 2619 motion. Yes, that's correct. And so there had to be some affirmative matter that you showed that would. Right. There are multiple, multiple exhibits attached to all of these pleadings. So the court had all of these exhibits in front of her related to hearing transcripts, copies of the charges, rules, our rules. So the court had all of that before her. Okay. Another basis, though, in addition or alternatively is we really feel very strongly that Dr. Byer should be stopped from even bringing his re-hearing argument because it's entirely clear in the first round of litigation in the circuit court until we terminated the proceedings, he repeatedly, repeatedly argued that what we were doing would be void, that it was unlawful, and the result of the first passage would have no merit, no meaning, and couldn't be enforceable. So we changed what we did. And he should not now be heard coming before the court. And I think he just stated this again, denying that he ever argued that the first proceedings were void. He clearly did. And you can't have it both ways. That's the doctrine of estoppel, to come and take a position in the court to say that what a municipal or administrative agency is doing is void, it needs to be stopped, it's unlawful, and the agency goes and does what you ask and say, well, I didn't ask to be recharged. Of course Dr. Byer didn't ask to be recharged. He didn't ask to be recharged in the first place. That has nothing to do with our authority. The question is are we acting within our authority, which we did when certainly under the amended charges, but it also has nothing to do with whether he should be estopped. And I think it's important to note, as the circuit court found, his arguments regarding this rehearing are smack of bad faith, and we would agree with that. And also I would point out to the court that the authorities such as Carter v. State of Education and Lane v. Village of Hayward state, you know, if an administrative agency is engaged in what looks to be an unlawful practice, which is what he alleged, they get to correct their action. It's not a get out of, you know, it's not some type of immunity for the employee who is being charged with wrongdoing. And the other line of cases that's relevant here is the Gilchrist v. Human Rights Commission and Taylor v. Start, which say that void agency action has, is a nullity. And the remedy for an improper void agency action is for the agency to start all over again. That's what we did. That's what he alleged we should do initially. And even if that's not what he wanted us to do, which seems to be the argument now, that's what we were authorized to do. Counsel, I asked you a point. What case law or statute specifically talks about free suspension and procedure? So the statute that counsel cited is the correct one. It's 34-85A2. And it says we need to issue rules. And that's all the, to conduct a PSA. Is there any other detail? No. And then what takes over there is the due process line of cases such as Loudermill. And, again, our conduct was totally in accordance with Loudermill. We were giving him, certainly in that second hearing, the opportunity to have notice and be heard. And he was. He admits that that happened. So this isn't a rehearing. There is nothing to rehear. And as the district court properly, circuit court properly found, his authority is distinguishable because the authority Dr. Byer relies upon all involves a decision on the merits. That didn't happen here. And because there is no decision on the merits, we were entitled to have the decision affirmed. And the preliminary injunction only comes into play if there's a remand. And we would stand by the circuit court's finding that there is no irreparable harm and he has an adequate remedy at law because once the hearings for termination are concluded, and those hearings are ongoing, there's already been five days of testimony. There's two more scheduled. If the charges are found ultimately to be unwarranted, Dr. Byer can be reinstated. So that is properly why the circuit court found that there was no irreparable harm. And, again, that finding is totally in accordance with longstanding due process cases, beginning with Loudermill in 1985, which say temporary suspension is appropriate if someone has been given notice and an opportunity to be heard and has a fuller hearing after that point in time. There's nothing unique about Dr. Byer's situation, his reputation, his claims of reputational harm. There's nothing unique about that. Can I ask a question? Sure. We will stand on the brief on the issue of LSC members' standings, and we'd ask that the decision of the circuit court be affirmed. We're also going to just call to the court's attention that we have brought a motion to consolidate with a related case. It's 19-2042. It's another interlocutory appeal from a claim that's also related to this, seeking administrative review of the suspension. We'd ask that the court just want to put that back on your radar screen. Thank you. Mr. Quiglin, brief rebuttal, please. Good morning, Your Honors, and just so the record is clear, I know Justice Harris here. It's William Quiglin on behalf of the plaintiff appellants. I'm going to try and address a few things that were raised by counsel for CPS, starting with a few things, one of which I think the record doesn't reflect, and two, just kind of addressing some of the questions. The first point was counsel for CPS said that they terminated the proceedings because of the lawsuit, but the record doesn't reflect that, that the lawsuit was brought. CPS chose to proceed with respect to the PSH or the pre-suspension hearing in the face of the lawsuit. So to say that they terminated because of the lawsuit, just the record does not reflect that, in fact, it belies that, because we filed the initial complaint. The decision of the question was there. They went forward in the face of this lawsuit, had the hearing, and again, as I said before, after they introduced evidence that then, you know, the decision-maker decided to terminate. Second, the question was it wasn't a rehearing. I think the facts demonstrate there's no question it was a rehearing. The same charges that were raised in PSA 1 was also reheard from the beginning. It wasn't an amendment. It started from the beginning. Did they hear the amended charges also at the second hearing? They did, Justice Cunningham. And the question was raised by counsel where they said that a decision to suspend was made solely with respect to the amended charges. That is, in fact, not correct with respect to the record. The decision that was made by the designee of the CEO, which the record is of A17 and A19, the first decision to suspend with respect to PSA 2 just says they chose to suspend. They made an amended decision, and in the amended decision, they said they reviewed the hearing officer's ruling and made a decision. They don't decide why they made a decision, and there's lies of cases. Sorry, I don't mean to cut you off. Your comment said they brought amended charges, which I take to, I understand to mean that in addition to the attendance issue, they charged him with some other misconduct that was not a part of the charges when they brought the first hearing. So they would have had to have a second hearing anyway because they amended, they added other charges. I mean, that's what I understood her to say. She did say that. That is correct. And I don't disagree that CPS could have started a separate PSH with respect to the amended charges if they filed the rules and brought separate, not amended. But they didn't have any rules, right? I mean, they made up, they made the rules up at your complaint, then they decided to make rules. And to be clear, I mean, we've talked about estoppel, and I don't think it comes close to estoppel. But CPS testified, and it's in the record before this Court, the transcript before Judge Jacobi, is that they did have rules. So this wasn't a circuit. I mean, we, of course, said they didn't, and they didn't have any rules that were promulgated. But they made a statement to the Court when the Court asked them about, and this is all in the transcript, so, about proceeding forward. So as I used the phrase, you pay your money, you take your choice, which is they could go forward with this hearing, but then the Court was going to look at whether it was proper. Did they have rules? And the response from the counsel for CPS was, yes, we have rules. And cited to provision, and they went forward in the face of that admonition. So when I spoke of all this, Justice Kennedy, and what I was talking about when I misspoke, it's really the statute. With respect to the termination proceedings, that if you had additional charges, you would follow those proceedings and go through them again. You wouldn't necessarily, you know, amend them and try and put them here because that causes a second termination. And the point that I wanted to be clear that I think was raised by counsel and isn't clear in the record, and like I said, there's cases on this, the decision was not made separately with respect to these amended charges. That is not the decision-maker specifically said, and as I said, that's an A-19, says they reviewed the hearing officers and then they decided. So we don't know what moved the decision-maker in the second one, which is, again, the CEO, same person who terminated. We don't know what moved them, and we can't say that they did it separately. The record doesn't say that. There are cases that say when you can't, you know, intertwine them, that you have to just basically void it or throw it out with respect to that. Secondly, the questions about termination that I wanted to point out, there is a definition with respect to the Administrative Review Code, and this is at 735, and I'll say this slower, Justice Connors, just because, sorry, ILCS 5-3-101, which I think is critical here. It provides that an administrative decision or decision means any decision, order, or determination of any administrative agency rendered in a particular case which affects the legal rights, duties, or privileges of a party and which terminates the proceedings before the administrative agency. So here, that provision, the administrative agency here under this provision is the CEO. She made a decision to terminate, as referenced by this definition in the Administrative Review Act, to terminate those proceedings. And by doing so, and again, it's just I can't say this strongly enough, after they put the case in fact, this isn't started, they put their case forward, they put that down, they put in all the facts, and then made a decision to terminate exactly as referenced here, and that was a decision. And even by the Circuit Court's own reasoning, if a decision was made, that second hearing wasn't valid. Secondly, okay, I'll be very quick. Sorry, I apologize, Justice Conner. Justice Conner said that questions about 2619 and 2615, the response that was made with respect by counsel for CPS as they talked about transcripts and the like, none of those factors are in the opinion, none of those were considered. So when you ask about whether that affirmative matter, the affirmative matter, and just to be clear when I answer, none of the attachments were considered in the opinion or discussed or were part of those rulings, which is why I gave you sort of a furrowed brow when you asked about 2615, 2619. And I'll just conclude, Justice Cunningham, that we will stand on our briefs with respect to the standing of the additional individual parents and teachers that have filed on behalf of Dr. Byron. Thank you both for your time. Thank you both for a very good argument, well-written briefs, and the matter will be taken under advisement, and we stand adjourned.